[Cite as *Hoteling v. Ozdemir*, 2017-Ohio-2922.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

MARCELLA HOTELING,

    PLAINTIFF-APPELLEE,              CASE NO. 16-16-04

    v.

PAT OZDEMIR, ET AL.,                 O P I N I O N

    DEFENDANTS-APPELLANTS.

Appeal from Wyandot County Common Pleas Court
Trial Court No. 15-CV-0078

**Judgment Affirmed**

Date of Decision: May 22, 2017

APPEARANCES:

    *Pat and Ali Ozdemir,* Appellants

    *Patterson W. Higgins* for Appellee

Case No. 16-16-04

**SHAW, J.**

{¶1} Defendants-appellants, Patricia Ozdemir and Ali Ozdemir (where referred to collectively, "appellants"), bring this appeal from the November 18, 2016, judgment of the Wyandot County Common Pleas Court awarding $23,000 to plaintiff-appellee, Marcella Hoteling ("Hoteling"), for money that Hoteling claimed that she loaned to the appellants and they never paid back.

*Facts and Procedural History*

{¶2} On September 14, 2015, Hoteling filed a complaint against appellants, which reads as follows.

> 1. **Plaintiff loaned the defendants the sum of $23,000.00 on or about October of 2010[.]**
>
> 2. **Defendants paid the plaintiff the sum of $1,000.00 on or about March 18[,] 2011.**
>
> 3. **Defendants have failed to pay the plaintiff any more money.**
>
> 4. **Wherefore the plaintiff demands judgment against the defendants for $22,000.00 plus interest and court costs.**

(Doc. No. 1). Attached to the complaint were copies of two cashier's checks from Hoteling that were made out to appellant Patricia Ozdemir.[1] One check was dated October 14, 2010, in the amount of $20,000, and the other check was dated October 28, 2010, in the amount of $3,000.

---

[1] The checks spell the appellee's last name as "Hotelling," but everywhere else in the record, including in her complaint, her last name is spelled "Hoteling." We will use the spelling that the trial court used.

{¶3} On October 9, 2015, appellants each individually filed pro se answers to the complaint. The answers both read, in pertinent part, as follows.

#### FIRST DEFENSE

1. **Defendant admits paragraphs One and Two of said Complaint;**

2. **Defendant denies the allegations set forth in paragraphs Three of Plaintiffs' [sic] Complaint.**

(Doc. Nos. 9-12).

{¶4} On November 2, 2016, the matter proceeded to a bench trial.[2] Hoteling was represented by counsel and the appellants proceeded pro se. At trial, Hoteling testified that she and her now-deceased husband, "Charlie," had been friends with appellants. Hoteling testified that she and Charlie ate at the restaurant that appellants either owned or ran nearly every day.[3]

{¶5} Hoteling testified that in early October of 2010, she was approached by Patricia about appellants potentially borrowing $20,000 to buy a house. Hoteling testified that she agreed to lend the money to appellants and that she went to her bank and withdrew the money. Hoteling testified that although she was married to Charlie at the time the money was lent, the money came from Hoteling's own separate bank account, which contained funds she had prior to her marriage to

---

[2] Before the trial began, the trial court inquired of Hoteling's counsel why he did not file a judgment on the pleadings based on the appellants' answers and he had no response. There was very little pretrial litigation in this case other than an order for the parties to undergo mediation.

[3] It is unclear whether the appellants owned the restaurant or managed it, a fact the trial court noted.

Charlie. A copy of the initial $20,000 cashier's check from Hoteling to Patricia was entered into evidence.

{¶6} Hoteling testified that shortly after she lent appellants the $20,000, the appellants requested $3,000 more due to additional costs. Hoteling testified that she took another $3,000 out of her bank account and gave it to Patricia. Hoteling testified that it was her understanding that the money was a loan. A copy of the cashier's check from Hoteling to Patricia for the $3,000 amount was entered into evidence.

{¶7} Hoteling testified that appellants indicated to her that they would sell their house in Marion to repay her, though it is not clear any timeline was discussed. Hoteling testified that appellants paid $1,000 in cash on March 18, 2011, but they had never given her any more money. Hoteling testified that appellants were living in the house that she paid for currently.

{¶8} On cross-examination Hoteling emphasized that the money that she claimed to have lent to appellants came out of her own account and that Charlie had no access to the money. Hoteling also clarified that the $1,000 payment the appellants made came after Hoteling and Charlie had tax consequences on the money Hoteling had withdrawn from her account and that the tax consequences were in excess of $1,000. At the conclusion of her testimony, Hoteling rested her case.

{¶9} Patricia Ozdemir testified in appellants' case-in-chief. Patricia testified that she only asked Hoteling for the $3,000, not for the other $20,000. Patricia testified that when she initially asked Hoteling for the additional $3,000, Hoteling told Patricia to ask Nancy, a customer at the appellants' restaurant, to loan her the money. Patricia testified that she did not "want to be a person that asks [her] customers for *loans*." (Emphasis added) (Tr. at 27). Patricia testified that Hoteling did get the $3,000 from the bank and provided it to her.

{¶10} On cross-examination Patricia admitted that she got both checks from Hoteling, though she did not know the money came from Hoteling's account. Patricia also testified that she and her husband did buy a house with the money they received from Hoteling, and that they were living in it "free and clear."

{¶11} On re-direct, Patricia testified that Charlie and Hoteling had helped Patricia financially on a prior occasion while Ali was in jail. The funds that Hoteling and Charlie lent at that time were unrelated to this case. As to that prior lending incident, Patricia testified that when Ali was released from jail, Patricia and Ali sold their car and returned the money that Hoteling and Charlie had given to Patricia while Ali was in jail.

{¶12} Ali Ozdemir then testified. Ali testified that Hoteling's husband Charlie had been a very good friend of his, like a father or brother to him. Ali testified that Charlie did a lot of things for him, and not just financially. Ali testified

that it was his understanding that Charlie was giving him the money to buy a house, not loaning it to him. Ali testified that Hoteling and Patricia were not even present when the conversation about the money took place; however, Ali acknowledged that he did receive the $23,000, that he bought a house with it, and that he owed no money on the purchased house.

{¶13} Ali was steadfast in maintaining that he felt the money came from Charlie rather than Hoteling and that the money was meant for Ali even though the cashier's checks were made out to Patricia. Ali testified that the check was to Patricia rather than him because the bank account was not in his name.

{¶14} At the conclusion of Ali's testimony, the appellants rested their case. The trial court then heard brief closing arguments, during which Ali implied that he had offered to give the house to Hoteling but she wanted the money instead. The trial court took the matter under advisement.

{¶15} On November 18, 2016, the trial court filed its judgment entry on the matter. In its entry, the trial court emphasized that in Hoteling's complaint she alleged that she lent appellants money and that in their answer, the appellants admitted this allegation. The trial court also noted that both parties agreed that appellants paid Hoteling and/or Charlie $1,000 in cash on or about March 18, 2011.

{¶16} The trial court determined that the evidence did not support appellants' claim that the money was a gift from Charlie to Ali, finding that Hoteling's

testimony was the more credible version of events. The trial court was persuaded by the fact that when Patricia stated she needed the additional $3,000 and Hoteling told her to ask a specific customer, Patricia stated that she did not want to ask a customer for a "loan." The trial court was also persuaded by the fact that appellants had paid $1,000 for adverse tax consequences as a result of the transaction, which had been demanded by Hoteling and Charlie, indicating that the money was perhaps not given "out of the goodness of [Charlie's] heart," as appellants suggested. (Doc. No. 22). Further, the trial court was persuaded by the previous transaction between the parties, wherein appellants sold a car to pay back another loan from Hoteling and Charlie.

{¶17} Finally, the trial court pointed out that while Ali argued that the transaction was really between him and Charlie, the actual paper checks were from Hoteling to Patricia, making Ali's version of events less credible. The trial court thus granted judgment to Hoteling in the sum of $23,000, plus interest at the statutory rate.[4]

{¶18} Appellants, proceeding pro se, filed an appeal from the trial court's judgment. They do not establish specific assignments of error in their abbreviated

---

[4] It would seem that the trial court's judgment of $23,000 rather than $22,000 considers that the $1,000 payment Hoteling did receive from appellants was for the additional taxes or penalties incurred rather than on the principal of the loan. Appellants make no arguments regarding this on appeal, thus we will not further address it.

brief to this Court; rather, they write "Questions Presented on Appeal."[5]  We will consider their "questions presented" as though they were separate assignments of error.  They read as follows.

**Assignment of Error No. 1**
**Did the Judge err in the [sic] money was for a house in Marion Ohio?**

**Assignment of Error No. 2**
**Did the Judge err in Charlie AKA Gene Demanded and Received one thousand dollars?**

**Assignment of Error No. 3**
**Did we fill in the answer to the Complaint?**

*First Assignment of Error*

{¶19} In the summary of their first assignment of error, appellants contend that the trial court erred by finding that the $23,000 that was provided to them was for a house specifically located in Marion, when it was actually for a house in Carey, Ohio.

{¶20} Appellants cite no legal authority showing how the trial court's alleged error would require altering the outcome of this case.  Moreover, despite the appellants' contentions that the location of the purchased house is important to the outcome of this case, it is actually entirely irrelevant to the central question before

---

[5] Appellants' failure to comply with the Appellate Rules of Procedure in several respects, specifically provisions of App.R. 16, could result in dismissal of the appeal.  However, in the interest of justice, we will address the arguments made.  *See Giesberger v. Alliance Police Dept.*, 5th Dist. Stark No. 2011CA00070, 2011-Ohio-5940, ¶ 16.

the court, which was whether the $23,000 was lent or gifted. Even if we entirely agreed with the appellants that the trial court incorrectly stated the location of the house that was purchased with the borrowed money, it would not alter the outcome here.

**{¶21}** Nevertheless, in the interest of justice we will briefly address the issue. In this case it was undisputed that the $23,000 was provided so that appellants could buy a house. Appellants contend that the trial court was mistaken in stating that the house that was to be bought with the $23,000 was in Marion.

**{¶22}** There was some testimony about appellants owning a separate house in Marion. It is unclear where the new house they were purchasing was located based on the actual evidence at trial, but from the appellants' brief and some statements made at trial outside of the evidence presented, it would seem the purchased house was actually in Carey, Ohio. Regardless, as stated previously, it is undisputed that the money was provided to purchase *a* house and the house's location has no bearing on the outcome of this case. Thus appellants' first assignment of error is overruled.

*Second Assignment of Error*

**{¶23}** As to the second assignment of error, appellants argue that the trial court erred in its entry by making the statement that "Charlie * * * demanded and received the $1,000.00 in March 2011." Appellants argue that "[n]either party

stated Charlie * * * demanded money from the defendants at any time. The plaintiff stated the money was a payment on the loan." (Appts' Br. at 2). Notably, the appellants' claim is not supported by any legal authority or any further argument as to how there was error here that would impact the outcome of this case.

{¶24} Again, the primary issue before the court was whether the money in this case was gifted or lent.[6] Appellants do not dispute that they paid $1,000; rather, they seem to contest what it is for or who requested it and when. Hoteling marked the $1,000 as payment toward the loan on a copy of one of the checks, and she testified that the money was provided after Hoteling and Charlie incurred additional tax consequences as a result of lending the money.

{¶25} Based on the evidence presented, which was at times unclear due to the pro se appellants talking over the witnesses and the trial court attempting to control the courtroom, we cannot find that the trial court erred. Nevertheless, even if we did determine that the trial court's finding was erroneous, it would not impact the outcome of this case. Therefore, appellants' second assignment of error is overruled.

*Third Assignment of Error*

{¶26} In their third assignment of error, appellants argue that they were "surprised" to learn that their answer admitted that they had received $23,000 in

---

[6] To some extent it was also about who had lent the money, Charlie or Hoteling.

loans from Hoteling and that the trial court erred by relying on this fact. Appellants claim in their reply brief that their "answer" was printed off in an attorney's office, though the attorney did not actually file the answer as the appellants proceeded pro se.

**{¶27}** Contrary to appellants' arguments, pro se litigants are held to the same standard as attorneys. *Goodrich v. Ohio Unemp. Comp. Rev. Comm.*, 10th Dist. Franklin No. 11AP-473, 2012-Ohio-467, ¶ 25. The appellants' answers clearly state that they admit the first two paragraphs of the complaint, admitting that they were lent the money in this matter. Appellants cannot be surprised by a document that they themselves filed. Therefore, the third assignment of error is overruled.

**{¶28}** Although it is not set-out as an assignment of error, or even as a "question presented," appellants seem to argue that Hoteling lied in court at the trial. The trial court found Hoteling credible and we have no reason to dispute this finding, particularly given that appellants cite to no legal authority and they cite to nothing in the record to suggest otherwise.[7]

**{¶29}** Finally, in their reply brief appellants raise an additional argument, stating that the trial court "got a lot of the facts wrong therefore she reached the wrong judgment." (Appts' Reply Br. at 1). We need not consider new arguments made in the reply brief, nevertheless, to the extent that appellants' new argument is

---

[7] Appellants' claim on appeal that Hoteling perjured herself at the trial is not an issue to be brought on appeal unless it is on an appeal from a charge of perjury or unless it is simply used to contest a witness's credibility.

raised, it is unsupported by legal and factual authority. The trial court's judgment was supported by the record. This is especially true given the appellants' answers to the complaint.

<em>Conclusion</em>

**{¶30}** For the foregoing reasons, appellants' arguments that we have considered as assignments of error are overruled and the judgment of the Wyandot County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**